UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DOUGLAS ROMINE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:21-CV-394-HAB |
| | ) |
| JACK COOPER TRANSPORT CO., LLC, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Defendant placed Plaintiff on unpaid leave for more than a year because Plaintiff could not comply with Defendant's COVID-19 mask mandate. Plaintiff sued, claiming that the decision to place him on unpaid leave violated the Americans with Disabilities Act ("ADA") and the Uniformed Services Employment and Reemployment Act ("USERRA"). Defendant moved for summary judgment. (ECF No. 32). That motion is now fully briefed (ECF Nos. 33, 36, 40) and ready for ruling.

**I.      The Parties' Motions to Strike**

Regrettably, the Court must first do some housekeeping before getting to the merits of Defendant's motion. The parties have both moved to strike. Plaintiff has moved to strike Defendant's motion for summary judgment *in toto*, while Defendant has moved to strike the declarations of Plaintiff and three allegedly undisclosed witnesses.

Plaintiff's motion first. It is undisputed that Defendant's motion violates this Court's local rules. Local Rule 56-1 requires a party moving for summary judgment to file "a Statement of Material Facts with numbered paragraphs for each material fact the moving party contends is undisputed which includes . . . a short statement of each fact; and . . . a citation to evidence

supporting each fact." N.D. Ind. L.R. 56-1(a)(3). Defendant did not file a separate Statement of Material Facts, and the statement of facts within its brief is not in the form required by the rule. (ECF No. 33 at 3-10). Plaintiff urges the Court to strike Defendant's motion for summary judgment as a sanction for this violation, claiming that the absence of a rule-mandated statement of material facts made it "onerous to provide a clear and cogent response."[1]

This Court's local rules exist for a reason, and parties are not free to disregard them at their convenience. That said, the punishment must fit the crime. Plaintiff was able, within the time allotted by the rules, to provide a "clear and cogent response" to Defendant's designated facts. It may have been moderately more "onerous" to do so, but that does not strike the Court as a basis to strike Defendant's summary judgment motion, and Plaintiff points the Court to no case law supporting his request. Rather, Plaintiff's additional time and effort can be compensated via an attorney fee petition should he prevail. 42 U.S.C. § 12205. Defendant's counsel is cautioned, however, to pay closer attention to this Court's rules going forward.

Defendant's motion next. Defendant first asks the Court to strike Plaintiff's declaration under the sham affidavit rule. The rule against sham affidavits provides that an affidavit is inadmissible when it contradicts the affiant's previous sworn testimony unless the earlier testimony was ambiguous, confusing, or the result of a memory lapse. *See*, *e.g.*, *Cook v. O'Neill*, 803 F.3d 296, 298 (7th Cir. 2015). The rule is designed to avoid sham factual issues and prevent parties from taking back concessions that later prove ill-advised. *United States v. Funds in the Amount of $271,080*, 816 F.3d 903, 907 (7th Cir. 2016). The Seventh Circuit has emphasized that

---

[1] The parties also bicker about how a motion to strike should be filed. Plaintiff points to the local rule on summary judgments, which states that "[d]isputes about the admissibility or materiality of evidence must be raised in the parties' briefs. A separate motion to strike must not be filed." N.D. Ind. L.R. 56-1(f). Defendant counters by pointing to the local rule on general motion practice, which requires that "[m]otions must be filed separately, but alternative motions may be filed in a single paper if each is named in the title following the caption." N.D. Ind. L.R. 7-1(a). The Court concedes that these rules are superficially inconsistent. In any event, the Court will consider both motions regardless of whether they were presented within the parties brief (Plaintiff's motion) or separately (Defendant's motion).

2

the rule is to be used with "great caution." *Id*. Thus, where the change is plausible or the party offers a suitable explanation for the change, the changes in testimony go to the witness' credibility rather than admissibility. *Id*.

The dispute over Plaintiff's declaration centers on a February 2020 meeting between Plaintiff, union representatives, and Defendant's representatives that pre-dates any facts here. Plaintiff testified that the meeting was to address accommodations for his PTSD diagnosis under the ADA. Plaintiff's declaration changes the characterization of this meeting, now claiming that the accommodations offered were under the Family and Medical Leave Act ("FMLA"). He explains this change by pointing to his lack of legal training (essentially that he confused the two laws) and his review of a transcript in an unrelated lawsuit where a representative of Defendant described the meeting as relating to the FMLA.

Ultimately, the dispute doesn't matter. The parties generally agree that the beginning of the meeting discussed the ADA, while the attendees discussed the FMLA at the end. And Plaintiff has submitted an apparent recording of the meeting confirming its dual-purpose. Given the Seventh Circuit's admonition that the Court apply the sham affidavit rule with "great caution," the Court finds that it can resolve Defendant's summary judgment motion without striking Plaintiff's affidavit.

The second part of Defendant's motion asks the Court to strike the declarations of three witnesses: John Edgar, Kevin Williams, and Keion Brooks. Defendant claims that these men were not identified as witnesses in Plaintiff's Rule 26 initial disclosures or in response to written discovery. Plaintiff responds that all three men were identified by Plaintiff at his deposition, curing any failure to disclose them earlier.

Federal Rule 37 states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Plaintiff admits that Edgar, Williams, and Brooks were not identified in his Rule 26 disclosures. The only question, then, is whether the failure was "substantially justified or is harmless."

When determining whether to exclude evidence under Rule 37, the Court considers: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar*, 324 F.3d 851, 857 (7th Cir. 2003). Harmlessness may be proved by a showing that a witness was disclosed during discovery. *Stolarczyk v. Senator Intern. Freight Forwarding, LLC*, 376 F. Supp. 2d 834, 843 (N.D. Ill. 2005).

The testimony that Defendant objects to is testimony from each man that Defendant's COVID-19 mask mandate was enforced unevenly, if at all. During his deposition, Plaintiff identified Edgar, Williams, and Brooks as individuals that told Plaintiff that the mandate was not being enforced. (ECF No. 45 at 2). This disclosure was enough to save the declarations from striking. *Coleman v. Keebler Co.*, 997 F. Supp. 1102, 1106-07 (N.D. Ind. 1998) ("Therefore, when the Plaintiff brought the identities of Martinez and Smith to Keebler's attention during Gates' deposition, she effectively satisfied her Rule 26(e)(1) duty to supplement her initial discovery disclosures, and Keebler's motion to strike should therefore be denied.")

In sum, the Court can distinguish which exhibits, affidavits, and statements may properly be considered when deciding whether summary judgment is appropriate, the Court denies the

4

parties' motions to strike. The Court has noted the objections and will consider the objections when they arise in the Court's summary judgment analysis.

## II.     Factual Background

Defendant is a transportation company, and its Fort Wayne, Indiana, facility works with a nearby General Motors assembly plant to ship completed GM vehicles. Plaintiff has worked for Defendant since 2011 as both a yard worker and a rail loader. As a yard worker, Plaintiff took completed vehicles and parked them for later loading. As a rail loader, Plaintiff took the parked vehicles and loaded them onto train cars.

Before working for Defendant, Plaintiff was in the military. He served in the Marine Corps from 2000 to 2004, and the Army National Guard from 2006 to 2011. Plaintiff reported his military service on his job application with Defendant. Plaintiff was not in active military service, nor was he called into reserve service or training, while working for Defendant.

In March 2020, Defendant shut down because of COVID-19. When it reopened in June of that year, it instituted safety protocols. These protocols were provided in written form to all Defendant's employees. The written safety protocols contained an acknowledgment form for each employee to sign. Plaintiff refused signature.

Relevant here, the safety protocols required all employees to wear some sort of facial covering while working. Defendant did not require medical grade masks; employees could also wear disposable masks, bandanas, or gaiters. Employees could also elect to wear face shields, but only in addition to one of the other facial coverings.

The requirement of a facial covering posed a medical issue for Plaintiff. In 2017, Plaintiff suffered a collapsed lung that required emergency surgery.[2] This condition left Plaintiff with

---

[2] Plaintiff would like to connect his collapsed lung to his military service. But even he admits that, at best, "his medical providers are currently in the process of determining whether this disability resulted from his prior military service."

5

ongoing breathing issues. So, upon receiving the safety protocols, Plaintiff talked to his rail supervisor about a possible exemption from the face covering requirement. Plaintiff was told to submit a doctor's note stating the nature of his breathing restrictions. Plaintiff did so, submitting a note from his doctor stating that he could not wear a mask because of his 2017 lung surgery.

At this point, the Court must go back to February 2020. Plaintiff previously sued Defendant in connection with accommodations related to PTSD from his military service. As part of the resolution to that suit, Plaintiff attended a meeting in February 2020, also attended by Plaintiff's union president, the union steward, the union's lawyer, and three representatives of Defendant.

As noted above, the parties dispute whether this meeting was to discuss ADA or FMLA accommodations. As also noted above, the meeting was about both, with most of the meeting being devoted to the ADA and the end devoted to the FMLA. Defendant claims that Plaintiff was provided with an ADA accommodation form at the end of this meeting; Plaintiff claims that he received an FMLA form. In any event, Plaintiff confirmed that, after the meeting, he understood the process for requesting an ADA accommodation. And to demonstrate this point, Defendant notes that Plaintiff contacted Terry Vasko ("Vasko"), Defendant Human Resources representative, to request an accommodation for his PTSD.

Back to June 2020. After Plaintiff submitted his doctor's note, Defendant's Superintendent, Kevin Tumbleson ("Tumbleson"), told Plaintiff to complete ADA accommodation paperwork. It is Defendant's position that, since Plaintiff had engaged in the accommodation process only four months prior, he knew what the process was in June 2020. But it is undisputed that no representative of Defendant ever gave Plaintiff the ADA accommodation paperwork in June. It is also undisputed that Plaintiff never asked for the paperwork in June.

---

(ECF No. 34 at 3). Without more, the Court will consider it undisputed that the collapsed lung was unrelated to military service that ended six years before.

At an apparent impasse, Tumbleson told Plaintiff that Plaintiff would be unable to work if he did not wear a mask. So Plaintiff was placed on unpaid leave. He did not return to work until the mask mandate was lifted in May 2021.

Defendant claims that, from June 2020 through May 2021, it uniformly applied the mask mandate and that "with the exception of Plaintiff [all employees] ultimately complied with the requirement." (ECF No. 33 at 7). Not so, Plaintiff asserts. Plaintiff submitted the declarations of Edgar, Williams, and Brooks in support of his claim. Edgar testified that he never wore a mask, that many supervisors did not consistently wear masks, and that just as many people did not wear masks as did. (ECF No. 35-6 at 2). Williams testified that he wore the masks for a few days but then refused. He also testified that "many" employees did not wear masks. (ECF No. 35-7 at 2). Similarly, Brooks testified that he wore a mask for about two months but then refused. He also testified that many supervisors did not consistently wear masks. (ECF No. 35-8 at 2). All three men testified that the written mask policy was not enforced. All three men also testified that Plaintiff was the only employee that was not allowed to work due to his inability or refusal to wear a mask.

**III.   Legal Discussion**

**A.   *Summary Judgment Standard***

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't*

*of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

**B.** *Defendant is Entitled to Summary Judgment on Plaintiff's USERRA Claim*

Plaintiff's first claim is for retaliation under USERRA. In essence, Plaintiff claims that his extended leave of absence was not because he could not wear a mask, but was in retaliation for a December 2019 suit against Defendant alleging violations of USERRA. Defendant denies any discrimination, and specifically points to the lack of any evidence that Plaintiff's leave was connected to the prior USERRA suit.

Enacted in 1994, USERRA is the latest in a series of veterans' employment rights laws, replacing its most immediate predecessor, the Veterans' Reemployment Rights Act ("VRRA") of 1974. 20 C.F.R. § 1002.2. The purposes of USERRA are: "(1) to encourage noncareer service in the uniformed services . . . ; (2) to minimize the disruption to the lives of persons performing service in the uniformed services . . . by providing for the prompt reemployment of such persons

8

upon their completion of such service; and (3) to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a). "In enacting USERRA, Congress emphasized USERRA's continuity with the VRRA . . . and that the large body of case law that had developed under [earlier] statutes remained in full force and effect, to the extent it is consistent with USERRA." 20 C.F.R. § 1002.2.

USERRA affords broad protections to service members against employment discrimination, providing that members "shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership." 38 U.S.C. 4311(a). A "benefit of employment" means "any advantage, profit, privilege, gain, status, account, or interest (other than wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes . . . the opportunity to select work hours or location of employment." *Id*. § 4303(2).

Apart from the general anti-discrimination provision of § 4311, § 4316 establishes the rights of service members who are absent from employment while fulfilling their service obligations. Such members are "(A) deemed to be on furlough or leave of absence while performing such service; and (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer" to similarly situated employees who take a leave of absence comparable to the military leave. *Id*. § 4316(b)(1).

To establish a retaliation claim under USERRA, Plaintiff must show that (1) he engaged in activity protected under USERRA and (2) Defendant took an adverse employment action against him as a result. *Tricarico v. Marion Gen. Hosp., Inc.*, Case No. 1:20-CV-92, 2021 WL 4078066, at *13 (N.D. Ind. Sept. 8, 2021). USERRA creates a two-step burden shifting scheme: (1) once a plaintiff makes out a prima facie case by showing that his membership was "a motivating factor,"

9

(2) the burden shifts to the employer to prove that it would have taken the same action regardless. *Crews v. City of Mt. Vernon*, 567 F.3d 860, 864 (7th Cir. 2009). To meet the "motivating factor" standard, a plaintiff does not necessarily need a direct admission from the employer. He may rely instead on circumstantial evidence that creates a "convincing mosaic" from which a reasonable jury could infer discriminatory motive. *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736–37 (7th Cir. 1994). Such evidence could include, for example, suspicious timing, statements, or behavior. In the aggregate, these individual pieces might be enough to prove—or at least to create a genuine issue about—the employer's ill motive. *See Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013).

Plaintiff argues that the "temporal proximity" between his USERRA protected action, either the filing of the suit or his February 2020 meeting, and the fact that other employees were not sent home[3], is enough to make out a prima facie case. The Court disagrees.

As Plaintiff admits, temporal proximity is rarely enough to create a triable issue of fact. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) (collecting cases). And the events here are not particularly proximate. *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (seven-week interval did not create genuine issue of face). Without more, the Court cannot conclude that a seven-month interval (to the filing of the suit) or a four-month interval (to the meeting) carries Plaintiff's burden of making a prima facie case that his military service or his protected activity under USERRA was a "motivating factor" for the unpaid leave. Summary judgment for Defendant on the USERRA claim is appropriate.

**C.**     ***Genuine Issues of Material Fact Preclude Summary Judgment on Plaintiff's ADA Discrimination Claim***

---

[3] The Court discounts this argument. The evidence shows that Plaintiff was not the only claimant in the 2019 suit. That other employees were not sent home, including those involved in similar USERRA-protected activity, undercuts Plaintiff's claim.

Next, Plaintiff alleges that Defendant discriminated against him by putting him on unpaid leave, and that the discrimination was because of his disability from his collapsed lung. Defendant disagrees, arguing that Plaintiff was not meeting its legitimate expectations, that he has not identified a non-disabled employee that was treated more favorably than him, and that it had a non-pretextual reason for placing him on leave. After reviewing the evidence and the law, the Court believes that Plaintiff's case should go to trial.

To prove an ADA claim for disparate treatment in violation of 42 U.S.C. §§ 12112(a) and (b)(1), Plaintiff must show: "(1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability."[4] *Roberts v. City of Chi.*, 817 F.3d 561, 565 (7th Cir. 2016). The disability must be the but-for cause of the discrimination; proof of mixed motives is not enough. *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010). When evaluating this issue at the summary judgment stage, a court must determine "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's . . . [disability] caused the . . . adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Direct evidence of disability discrimination is rare. *Rowlands v. United Parcel Serv.-Fort Wayne*, 901 F.3d 792, 802 (7th Cir. 2018). Instead, plaintiffs typically demonstrate discrimination with circumstantial evidence. *Id*. This may include "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive[d] better treatment; and (4) evidence that the employer offered a pretextual reason for an

---

[4] Plaintiff calls these requirements the elements of a "direct case" of disability under the ADA. (ECF No. 36 at 3). The Court does not understand these elements to be separate from the *McDonnell Douglas* framework elements discussed below. In any event, the Court finds that Plaintiff's case survives under any approach.

adverse employment action." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017) (quotation marks omitted). "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself . . .." *Ortiz*, 834 F.3d at 765. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

One method a plaintiff may use for "organizing, presenting, and assessing circumstantial evidence" in discrimination cases is the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), under which:

> the plaintiff has the initial burden of establishing that (1) he is a member of a protected class, (2) he performed reasonably on the job in accord with his employer's legitimate expectations, (3) despite his reasonable performance, he was subjected to an adverse employment action, and (4) similarly situated employees outside of his protected class were treated more favorably by the employer.

*David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224–25 (7th Cir. 2017) (cleaned up). The burden then shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id*. at 225. Plaintiff proceeds under the burden-shifting framework, so the Court will do the same.

Defendant agrees that Plaintiff meets the first and third elements but contests the other two. Legitimate expectations first. Defendant argues that, because Plaintiff could not comply with the mask mandate, he was not meeting Defendant's legitimate expectations. The Court cannot agree. Defendant cites three cases that it submits holds that "an employee fails to meet his employer's legitimate expectations where he fails to comport with the employer's workplace safety policies." (ECF No. 33 at 16). The cases might stand for this proposition, but they have little to do with this

case. In each, the employee either refused to comply with safety policies for personal—not medical—reasons or was simply unsafe. *See Brock v. U.S. Steel Corp.*, Case No. 2:09-CV-344, 2011 WL 3443954, at *7 (N.D. Aug. 8, 2011) (employee refused to grow hair to allow for drug testing); *O'Neal v. City of Chicago*, 588 F.3d 406, 410 (7th Cir. 2009) (police officer did not meet department's legitimate expectations because her conduct "jeopardized the safety of [an] undercover officer"); *Contreras v. Suncast Corp.*, 237 F.3d 756, 760–61 (7th Cir. 2001) (employee was not meeting legitimate expectations because he "was repeatedly cited for operating his forklift in an unsafe manner"). Plaintiff's conduct does not resemble the claimants in any of these cases.

But even if Defendant's legal position were correct, Plaintiff has designated evidence that casts doubt on whether compliance with the mask mandate was required to meet Defendant's legitimate expectations. He has submitted the declarations of at least three employees permitted to work without masks. The statements of these employees at least raise a genuine issue of material fact as to whether Plaintiff could, and was, meeting Defendant's legitimate expectations when working without a mask.

The statements of these employees also defeat Defendant's argument that Plaintiff has not shown that he was treated less favorably than similarly situated non-disabled employees. In its reply, Defendant does not argue that Edgar, Williams, and Brooks were not similarly situated. Instead, somewhat quizzically, it argues that their statements are "***consistent with***" its position that masks were required for employees to work. (ECF No. 40 at 5) (original emphasis). It argues that the declarations "***concede*** that there were instances on which Defendant's employees were equally disciplined for noncompliance with the masking policy." (*Id.*) (original emphasis). There might be some lines from the declarations that, context-free, support Defendant's position. But Edgar states that he "never wore a mask" and was "never sent home or disciplined for [his] refusal to wear a

13

mask." (ECF No. 35-6 at 2). Williams testified that he "refused to wear the masks." (ECF No. 35-7 at 2). Brooks testified that he "was never disciplined when [he] stopped wearing a mask." (ECF No. 35-8 at 2). Defendant seems to argue that, maybe, it never saw these individuals failing to wear a mask, but that's an issue for trial. Plaintiff has made out a prima facie case of discrimination.

The issue, then, is whether the mask mandate was a non-pretextual reason for Plaintiff's unpaid leave. Pretext means "a fabrication, designed to conceal an unlawful reason"; it is "something worse than a business error," where "deceit [is] used to cover one's tracks." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 684 (7th Cir. 2000) (citation omitted). To demonstrate pretext, Plaintiff can present evidence that: (1) Defendant was "more likely than not motivated by a discriminatory reason"; or (2) Defendant's stated reason is not credible. *Alexander v. Wisconsin Dep't of Health & Fam. Servs.*, 263 F.3d 673, 682 (7th Cir. 2001). When considering pretext at the summary judgment stage, "the only question before [the Court] is whether the plaintiff has provided evidence from which a rational trier of fact could infer that the employer's stated reasons for taking the adverse action were lies." *Alexander*, 263 F.3d at 683. "In determining whether the employer's reason can be characterized as pretextual, [the Court does] not evaluate whether the employer's proffered justification was accurate or even whether it was unfair. [The Court's] sole focus is on whether the employer's stated reason can be characterized as a falsehood rather than an honestly held belief." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020).

The Court finds that, if Edgar, Williams, and Brooks are believed, a genuine issue of fact exists as to pretext. If "just as many employees . . . did not wear masks, as those who did wear them," and none of those individuals were sent home for a long time span, then a reasonable factfinder could conclude that Defendant lied when it said that it sent Plaintiff on unpaid leave for

14

more than a year because he couldn't wear one. (ECF No. 35-6 at 2). That's enough for Plaintiff's case to survive summary judgment.

Perhaps a jury will not believe Plaintiff's witnesses and will find that Defendant uniformly and conscientiously enforced its mask mandate. But at this point, giving Plaintiff every reasonable inference, a reasonable factfinder could conclude that Plaintiff's disability caused his adverse employment action. Summary judgment will be denied on Plaintiff's ADA discrimination claim.

**D.**  *Genuine Issues of Material Preclude Summary Judgment on Plaintiff's ADA Failure to Accommodate Claim*

Finally, Plaintiff claims that Defendant violated the ADA by failing to accommodate his disability. Defendant counters that any failure to accommodate was Plaintiff's fault, as he failed to follow Defendant's accommodation process.[5] Plaintiff's disability was not accommodated, nor was an accommodation even discussed, so the question before the Court is who bears responsibility for the breakdown in the accommodation process.

To establish a claim for failure to accommodate, Plaintiff must show that: (1) he is a qualified individual with a disability; (2) Defendant was aware of his disability; and (3) Defendant failed to reasonably accommodate the disability. *Hoffman v. Caterpillar, Inc*., 256 F.3d 568, 572 (7th Cir. 2001). As to the third element, the "ADA requires that employer and employee engage in an interactive process to determine a reasonable accommodation." *Baert v. Euclid Beverage, Ltd*., 149 F.3d 626, 633 (7th Cir. 1998). If a disabled employee shows that his disability was not reasonably accommodated, the employer will be liable only if it bears responsibility for the

---

[5] Defendant also argues that Plaintiff was not a "qualified individual" under the ADA because he could not perform his essential job functions with or without an accommodation. But this is simply a rehash of Defendant's argument that Plaintiff was not meeting its legitimate expectations. (ECF No. 22 at 19) ("Plaintiff was not a 'qualified individual' for the same reason that he failed to meet Jack Cooper's legitimate expectations . . .."). It fails for the same reason.

15

breakdown of the interactive process. *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996).

After an employee's initial disclosure, "the ADA obligates the employer to engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *Gile v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir. 2000) (internal quotations omitted). "Failure to engage in this 'interactive process' cannot give rise to a claim for relief, however, if the employer can show that no reasonable accommodation was possible." *Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000). Therefore, the Court must ordinarily look first to whether there is a genuine issue of material fact about the availability of a reasonable accommodation, and if no reasonable accommodation was available, it must stop there. *See Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir.2001).

Defendant asserts that there was no reasonable accommodation available because the COVID-19 policies of both Defendant and GM required masks, which Plaintiff's doctor said he could not wear. But, as noted more than once above, that argument holds water only if those policies were enforced. Because the evidence shows that they were not, and that half or more of Defendant's employees worked daily without any mask, the mask mandate provides Defendant with no support at the summary judgment stage.

The purpose of the interactive process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). This step imposes a duty on employers to engage in a flexible give-and-take with the disabled employee so that together they can determine what accommodation would enable the employee to continue working. *Gile*, 213 F.3d at 373. If this process fails to lead to

reasonable accommodation of the disabled employee's limitations, responsibility will lie with the party that caused the breakdown:

> No hard and fast rule will suffice, because neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

*Beck*, 75 F.3d at 1135.

Defendant's argument, in summary, is that Plaintiff is responsible for the breakdown because he never asked for an accommodation form. Defendant asserts that Plaintiff knew how to navigate the accommodation process because of the February 2020 meeting, so when he didn't request the form, that was where the process broke down. Plaintiff counters that he did engage in the process by obtaining, as requested, the doctor's note, and that Defendant is responsible for the breakdown because Plaintiff was never provided with the accommodation form.

The Court sides with Plaintiff, but only just. The problem with Defendant's argument, that Plaintiff should be charged with knowledge from a prior ADA encounter, is that it is unsupported by case law. Defendant does not cite a single authority that holds that an employer can rely on a prior interactive process to satisfy its obligations in a later one. Maybe Plaintiff successfully navigated the ADA process in early 2020, but the Court has nothing that holds that Defendant can simply expect him to do that again in June 2020 without any input from Defendant.

It seems to the Court that Plaintiff did what he was asked—he obtained a doctor's note stating that he couldn't wear a mask. After that, the parties dispute whether Plaintiff was to be provided with accommodation paperwork or he was to seek that out. The record is also disputed regarding how familiar Plaintiff was with the ADA accommodation process, prior involvement

17

notwithstanding. The Court finds this to be enough to create a genuine issue of fact on who bears responsibility for the breakdown in the interactive process.

## IV. Conclusion

For these reasons, the Court GRANTS in part and DENIES in part Defendant's motion for summary judgment (ECF No. 32). The motion is GRANTED with respect to Plaintiff's claims under the USERRA. The motion is DENIED in all other respects.

SO ORDERED on January 8, 2024.

                                      s/ *Holly A. Brady*
                                      CHIEF JUDGE HOLLY A. BRADY
                                      UNITED STATES DISTRICT COURT